UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAD SCIENCE GROUP, INC., EDUTAIN LEARN, INC. & MAD SCIENCE LICENSING, INC., <br><br>Plaintiff<br><br>v.<br><br>ADAM ELLIS & SUPER SCIENCE LLC,<br><br>Defendants. | Case No: 1:22-cv-10376 |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Adam Ellis and Super Science LLC ("Super Science") caused and are liable for harm suffered by Plaintiffs Mad Science Group, Inc. ("Mad Science") and Edutain Learn, Inc. ("Edutain") during and after Ellis' employment with Edutain, a Mad Science corporate owned Franchisee. While still employed by Edutain and following his separation therefrom, Ellis violated Mad Science's trademarks and copyrights, unlawfully diverted business from his employer to his own company, unfairly competed with his employer in the marketplace, and materially breached his contractual agreements with Edutain and Mad Science, as detailed herein.

### PARTIES

2. Plaintiff Mad Science Group, Inc. is a Canadian Corporation duly organized and existing under the laws of Canada with a registered office address of 8360 Bougainville, Suite 201, Montreal QC H4P 2G1, Canada.

3. Plaintiff Mad Science Licensing, Inc. is a Canadian Corporation duly organized and existing under the laws of Canada with a registered office address of 8360 Bougainville, Suite 201, Montreal QC H4P 2G1, Canada.

4. Plaintiff Edutain Learn, Inc. is a Delaware corporation duly organized and existing under the laws of the State of Delaware with previous business address location at 1000 Pleasant St., Unit 3, Belmont MA 02478.

5. Defendant Super Science LLC is a Massachusetts limited liability company duly organized under the laws of the Commonwealth of Massachusetts with a principal office at 32 Gunhouse St., Sharon, MA 02067.

6. Defendant Adam Ellis is an individual residing in Sharon, MA.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 17 U.S.C. § 501 and 15 U.S.C. § 1444. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. This Court also has pendent jurisdiction under 28 U.S.C. § 1367 over the related claims pursuant to state law.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because upon information and belief the majority of the events giving rise to this civil action occurred in this judicial district.

9. This Court has personal jurisdiction over all Defendants because all Defendants reside in or exist within the Commonwealth of Massachusetts in Norfolk County and the majority of the events complained of occurred within and Suffolk and Norfolk County.

## FACTUAL ALLEGATIONS

10. Mad Science is an international franchisor which has been developing and presenting a curriculum of fun and educational science programs for kids for over thirty years,

including but not limited to, after-school workshops, summer programs, birthday parties, camps, special events and shows.  Mad Science's affiliate, Mad Science Licensing Inc., owns the Mad Science System and trademarks and has a license in place with Mad Science which allows it grant franchises use of this intellectual property in the operation of Mad Science businesses. Mad Science's programs focus on STEM education, which is an integration of science, technology, engineering, mathematics and associated practices presented in an environment where students are given the opportunity to engage in real world problem solving, and to witness evidenced based explanations of real-world phenomena.

11.     Mad Science has invested substantial time, effort and money over the years developing unique and exciting educational experiences which are based on, and comprised of, Mad Science's valuable and carefully protected intellectual property.

12.     Mad Science contracts with franchisees around the world, and provides them with, among other services and products, extensive training in the proprietary "Mad Science System" of teaching, marketing and selling its carefully developed after school programs, workshops, birthday parties, camps and special events, licenses to Mad Science copyrights and trademarks, copyrighted manuals detailing the Mad Science System, access to certain online resources, the ability to purchase Mad Science branded and developed equipment and the opportunity access to Mad Science trade secrets.  Each Mad Science Franchise is licensed to use the Mad Science System. The Mad Science System includes carefully scripted and outlined interactive science activities for children, specially developed course materials, exclusively designed signage and materials, the Mad Science Confidential Operations Manual, the Standard Operating Policies Manual and other written specifications/standards, methods for inventory and

3

cost controls, record keeping and reporting, personnel management, purchasing, sales promotion, and advertising.

13. All Mad Science franchises utilize and operate under the service marks, "MAD SCIENCE" and "MAD SCIENCE & DESIGN," and associated logos, commercial symbols and other trade names, service marks and trademarks designated and licensed by Mad Science as part of the Mad Science System.

14. In July of 2016 Mad Science executed a Franchise Agreement with Edutain Learn, Inc., a Delaware corporation with a place of business in Boston, Massachusetts ("Edutain"). Edutain is a U.S. corporate owned Franchise, and is a wholly owned subsidiary of 3908160 Canada Inc, which is also the parent company of Mad Science.

15. In July of 2018 Edutain entered into an Employment Agreement with Adam Ellis, a Massachusetts resident, to retain him as its Franchise Business Manager. In this role, Mr. Ellis was responsible for overseeing the Franchise's business operations, along with various other critical duties including presenting at Mad Science events. His duties explicitly included the duty to maintain strict confidentiality regarding operational processes and procedure, including programs and pricing.

16. As a part of his onboarding with Edutain and Mad Science, Mr. Ellis signed two agreements; an employment agreement executed directly with Edutain which required him to comply with the company's policies, including keeping company intellectual property and pricing confidential and a non-disclosure agreement executed with Mad Science, which strictly forbade the transmission or use of the confidential information of Mad Science, including its intellectual property and trade secrets.

17. During his employment at Edutain, Mr. Ellis was provided with and/or given access to critical confidential and proprietary information of Mad Science, including the materials comprising the Mad Science System, other copyrighted manuals which describe Mad Science's proprietary teaching and presentation methods, Mad Science branded equipment, online resources exclusively licensed to Mad Science Franchisees, and other valuable intellectual property.

18. Mr. Ellis worked at Edutain from 2018 to the end of 2020, at which time, he reached out to Mr. Mina to say that he was leaving Edutain to become a primary school teacher. During the separation process Mr. Ellis was asked about his current projects and deliverables in the upcoming year, and he told his employer that he had no business to deliver for Mad Science past December 31, 2020.

19. His communications with Mr. Mina and the rest of his colleagues continued to be friendly in nature throughout the process of his separation and he and Mr. Mina parted on what seemed like quite good terms.

20. However, unbeknownst to Mr. Mina, while still employed at Edutain Mr. Ellis had begun to set out to compete with Mad Science and Edutain, using not only techniques and know-how he obtained while employed by Edutain, but also using Mad Science's proprietary trade secrets, intellectual property and customer lists.  He also actively diverted business away from Edutain and Mad Science to his own company before his departure.

21. Upon information and belief, Mr. Ellis began to build his unlawfully competing business in or around June of 2020 while he was still actively in the employ of Edutain.  This included solicitation of Mad Science and Edutain customers, and development of infringing materials for a confusingly similar business model to that of Mad Science.  Upon information

and belief, Mr. Ellis used his position as Franchise Business Manager and his access to Mad Science's proprietary materials, intellectual property and trade secrets to create copies and infringing derivative works of these Mad Science materials to create the teaching materials, website, and equipment for his undisclosed and unlawful competing business.

22. In October of 2020 Mr. Ellis registered a Limited Liability Company in the state of Massachusetts called Super Science LLC ("Super Science") in which registration he disclosed as the general character of the business "Educational Enrichment." Upon information and belief, prior to his departure from Mad Science he also developed websites for Super Science Fun and another business apparently called Atomic Adventures, both of which mirrored the business and business model of Mad Science and Edutain, as well as the Mad Science System.

23. In his role as a Mad Science Franchise Business Manager for Edutain, Mr. Ellis had contact with a wide network of contacts at schools and after school programs, all of whom were clients or potential clients of Edutain. Upon information and belief, Mr. Ellis was aware that this client list was proprietary to Edutain, but he nonetheless began to redirect potential Mad Science customers in Edutain's network to Super Science and Atomic Adventure programs, both before his departure from Mad Science and after. Upon information and belief, Mr. Ellis not only kept this deceptive behavior secret from Edutain, but he also did not disclose to such customers that the Super Science and Atomic Adventures offerings were not, in fact, Mad Science products.

24. By the time Mr. Ellis had left Mad Science his competing business was already in full swing. He had scheduled numerous appearances in and around the Boston area throughout the beginning of 2021 at schools, community educations centers, libraries and the like. Upon information and belief all or substantially all of the entities and individual he contracted with for

6

these appearances were customers or potential customers of Edutain. Indeed, there is simply no way that he would have been able to put together such a robust slate of events in so short a time without availing himself of his employer's trade secret and its customer list.

25. This conduct is directly in breach of both his Employment Agreement with Edutain and the Non-Disclosure Agreement he signed with Mad Science as well as his obligations to his employer under Massachusetts law. It also created substantial confusion in the marketplace and damage to Mad Science's reputation.

26. As early as January of 2021, Edutain and Mad Science began to receive complaints about programs run by Mr. Ellis, which consumers believed to be Mad Science programs but were in fact infringing Super Science and/or Atomic Adventures programs masquerading as Mad Science. This confusion caused consternation for local Mad Science Franchisees, including Edutain, who not only lost business to this counterfeit operation, but are having their reputations tarnished by this false association of Mr. Ellis/Super Science with Mad Science. These complaints also made it clear to Plaintiffs that Mr. Ellis had been running Super Science and Atomic Adventures programs prior to his departure from Mad Science.

27. Throughout 2021 Mr. Ellis continued to build his competing and infringing STEM education business in the Boston area, trading on the goodwill of Mad Science and damaging the businesses and reputation of legitimate Mad Science franchisees.

28. Not only did Defendants intentionally confuse Mad Science customers and divert the business of Mad Science customers to Mr. Ellis' competing businesses since well before his departure from the company, they also liberally and unlawfully made use of Mad Science's intellectual property and proprietary equipment and materials to do so. In fact, Mr. Ellis's Facebook page for Super Science still features images of experiments being done with Mad

Science branded equipment and materials. Mr. Ellis' personal Facebook account also displays Mad Science logos, Mad Science programming, and promotional and/or marketing materials of Mad Science workshops and programming, including complementary programming such as Brixology, Schoolhouse Chess and NASA workshops offered by Mad Science. Furthermore Mr. Ellis' personal Facebook page includes posts involving Mad Science Products including references to the branded product Loop Lab box, and erroneously states that he works at Mad Science.

29. The website of Super Science, supersciencefun.com described the business offerings of Super Science as "adventure-based learning" and offers educational performances and enrichment programs, which follow the same exact themes of programs offered by Mad Science franchises. Featured program topics on the Super Science website included, "engineering, espionage experts, inventors' club, potent potions, space explorers, creatures, excavators, wired robots, and wilderness survival." As of the date of the filing of this Complaint, the Super Science website appears to be offline. Atomic Adventure also offered substantially similar courses, including Radical Reactions, Physics Olympics, Space Explorers, and more. Upon information and belief these websites were live prior to Mr. Ellis' departure from Mad Science. This website too appears to have been taken down as of the date of filing.

30. The Super Science and Atomic Adventures programs closely mirrored the programs offered by Mad Science Franchisees, including Edutain, which included programs relating to space exploration, physics, detective and CSI science, chemical reactions, dinosaurs, etc. In some cases, the Defendants programs even directly copy the names of the Mad Science programs, for example, Super Science offers a course called "Radical Reactions" which is the same in name and content to a Mad Science program that was offered by Edutain during Mr.

8

Ellis' employment. Likewise, the Super Science program "Space Explorers" is identical to the Mad Science's "NASA Academy of Future Space Explorers" in its structure, topics and style. The Super Science website and its promotional materials even display images identical to images on the Mad Science website, all of which are owned by Mad Science.

31. The marketing and presentation by Super Science and Atomic Adventures of their counterfeit STEM classes were so strikingly similar in structure, topics, materials, equipment and style to those classes and workshops offered by Mad Science, and its franchisees including Edutain, that Plaintiffs also have reason to believe that Mr. Ellis is utilizing the Mad Science System materials, including copyrighted Mad Science teaching manuals which Mr. Ellis had access through his employment at Edutain. These manuals capture Mad Science's valuable and proprietary system for not only educating instructors, but also individual scripts for each of its shows along with its carefully protected business model relating to marketing and business operations.

32. This confusion in the market continued until very recently. Mad Science and its Franchisees continued to receive communications from schools, parents and other organizations which clearly demonstrated that the consumers in question believe that Mr. Ellis and his company Super Science are affiliated with Mad Science until early 2022. Mad Science was informed earlier this year that Mr. Ellis has ceased operating Super Science. It appears that Mr. Ellis has cancelled Super Science LLC with the Massachusetts Secretary of State. This is good news for Mad Science. However, there is no question that Mr. Ellis was trading on his previous association with Mad Science as well as misappropriated trade secrets, intellectual property, confidential information and know-how, in order to divert customers seeking the services of Mad Science and its franchisees to his own infringing operation.

## COUNT I
## COPYRIGHT INFRINGEMENT

33. Plaintiff restates the allegations set forth above and incorporates each as if fully set forth herein.

34. Mad Science has expended a great deal of time and money into creating unique and protectable intellectual property. This includes its copyrighted website, teaching materials, franchise manuals and the materials that encompass the Mad Science System.

35. Despite being aware that these materials were owned by Mad Science, Mr. Ellis and Super Science purposefully and knowingly copied the names and content of Mad Science courses, and on information and belief utilized and distributed copyrighted Mad Science manuals and other materials to instruct defendants' employees.

36. By copying, reproducing and distributing identical or substantially similar classes and teaching materials to those copyrighted by Mad Science in their own educational programs and internal trainings, Defendants have infringed Mad Science's exclusive copyright in those materials in violation of Sections 106 and 501 of the Copyright Act, at 17 U.S.C. §§106 and 501.

37. Defendants' acts of infringement were willful, intentional, purposeful and ongoing, and in disregard of and with indifference to Plaintiffs' rights.

38. As a direct and proximate result of said infringement by Defendants, Mad Science is entitled to damages and profits pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits in an amount to be proved at trial.

39. As a direct and proximate result of said willful and inexcusable infringement by Defendants, Mad Science is also entitled to statutory damages up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c).

40. Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## COUNT II
## TRADEMARK INFRINGEMENT

41. Plaintiff restates the allegations set forth above and incorporates each as if fully set forth herein.

42. Defendants have used Mad Science trademarks, logos and branded products and equipment in their shows and on their Facebook pages, which directly infringes these marks and has further misled consumers with respect to Defendants' affiliation with Mad Science.

43. Defendants' use of the "Mad Science" trademark on its various Facebook pages and in its classes and shows is a violation of 15 U.S.C. §§ 1114.

44. Defendants' infringement of Mad Science's marks shows clear intentional, willful and malicious intent to trade on the goodwill that Mad Science has spent significant time and money developing through its franchisees all over the world and is causing great and irreparable harm.

45. As a direct and proximate result of said infringement by Defendants, Mad Science is entitled to actual damages, enhanced profits and damages, costs and attorney fees pursuant to 17 U.S.C. §§ 1114, 1116 and 1117.

## COUNT III
## BREACH OF CONTRACT – NON-DISCLOSURE AGREEMENT

46. Plaintiffs restates the allegations set forth above and incorporates each as if fully set forth herein.

47. As a part of his employment with Edutain and his association with Mad Science through his role as Edutain's franchise business manager, Mr. Ellis signed a Non-Disclosure

Agreement with Mad Science which includes, among other provisions, an agreement not to commercialize any of the confidential information of Mad Science without Mad Science's participation in the same.

48. Mr. Ellis has directly breached this agreement by disclosing and appropriating Mad Science and Edutain's confidential information, trade secrets, intellectual property and know how and commercializing it for his own use, both while still an employee of Edutain and after his departure.

49. Defendants have caused substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees in an amount to be proved at trial.

## COUNT IV
## BREACH OF CONTRACT –EMPLOYMENT AGREEMENT

50. As a part of his employment with Edutain and his association with Mad Science through his role as Edutain's franchise business manager, Mr. Ellis signed an Employment Agreement which required him to adhere to Edutain's company policies and included a clear requirement that he maintain strict confidentiality as regarding to customer policies, procedures and intellectual property.

51. Mr. Ellis has directly breached this agreement by contravening company policies, including but not limited to the policy stated clearly in the Employment Agreement itself that he maintain strict confidentiality with respect to customer programs, pricing and the nature of his employers' business.

52. Defendants have caused substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys fees in an amount to be proved at trial.

## COUNT V
## FEDERAL UNFAIR COMPETITION

53. Plaintiff restates the allegations set forth above and incorporates each as if fully set forth herein.

54. Mr. Ellis' use of Mad Science's logo, use of Mad Science's proprietary materials, and breach of his obligations of confidentiality to Mad Science has caused confusion, deception and mistake by creating the false and misleading impression that Defendant's goods and services (as well as those offered on the Atomic Adventures website) were provided by or affiliated, connected or associated with Mad Science.

55. Mr. Ellis has made false representations, false descriptions and false designation of, on or in connection with Super Sciences goods and services in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused a likelihood of confusion and deception of members of the trade and public and injury to Mad Science and its franchisees' goodwill and reputation.

56. Defendants' actions demonstrated an intentional, willful and malicious intent to trade on the goodwill of Mad Science and its franchisees to their great and irreparable injury.

57. Defendants have caused substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys fees in an amount to be proved at trial.

## COUNT VI
## VIOLATION OF MASSACHUSETTS CH. 93A, UNFAIR COMPETITION

58. Plaintiff restates the allegations set forth above and incorporates each as if fully set forth herein.

59. Mr. Ellis knowingly misappropriated his employers trade secrets and intellectual property both during and after his employment with Edutain, and wrongly solicited clients and

potential clients of Edutain both while employed by Edutain and following his employment, all with the specific intent of wrongfully competing with his employer and with his employer's licensor, Mad Science, in the Massachusetts marketplace in violation of G.L. c. 93A.

60. Defendant's conduct was intentional and willful and has caused substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, treble damages and reasonable attorney's fees in an amount to be proved at trial.

## COUNT VII
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

61. Plaintiff restates the allegations set forth above and incorporates each as if fully set forth herein.

62. Mr. Ellis and Super Science's acts constitute common law trademark infringement and unfair competition, and have created a likelihood of confusion to the irreparable injury of Plaintiffs, who have no adequate remedy at law for this injury.

63. Defendants acted with full knowledge of Mad Science's use of and statutory and common law rights to, its mark "Mad Science" and without regard to the likelihood of confusion of the public created by their activities.

64. Defendants actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with Mad Science's name and marks to the great injury of Plaintiffs.

65. As a result of Defendants' actions, Plaintiffs have been damaged in an amount not yet determined. At a minimum however, Plaintiffs are entitled to an accounting of Defendants'

profits, damages and costs.    Further, in light of the deliberate and malicious use of Mad Science's marks, as well as a confusingly similar imitation of Mad Science's marks and trade dress, and the need to deter Defendants from engaging in similar conduct in the future, Plaintiffs are entitled to punitive damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court enter judgment in his favor:

    1.)    For Defendants to be compelled to account to Plaintiffs for any and all profits derived from the sale and delivery of the infringing programs;

    2.)    For Plaintiffs to be awarded all damages caused by the acts forming the basis of this Complaint;

    3.)    Based on Defendants knowing and intentional use of Mad Science's marks as well as a confusingly similar imitation of the Mad Science mark and trade dress, the damages be trebled and an award of profits be enhanced as provided for by 15 U.S.C. § 1117(a);

    4.)    Based on Defendants willful and knowing acts of unfair competition, the damages be trebled and attorney fees awardee to Plaintiffs under G.L. c. 93A;

     66.    For Plaintiffs to be awarded statutory damages up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c);

    5.)    For Plaintiffs to be awarded punitive damages; and

    6.)    And for such other and further relief as this Honorable Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 11, 2022

Respectfully submitted,

MAD SCIENCE GROUP INC.
EDUTAIN LEARN INC. &
MAD SCIENCE LICENSING, INC.,

By their Counsel,

/s/ Mae Stiles
Mae Stiles, Esq., BBO #569537
FIERST BLOOMBERG OHM LLP
64 Gothic Street, Suite 4
Northampton, MA 01060
413-727-8300
stiles@fierstbloomberg.com